**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**KANSAS CITY DIVISION**

THE ESTATE OF TIMOTHY JOSEPH BEST, II, by and through its Personal Representative, SHAWN M. BEST; and TIMOTHY BEST, SR. and SHAWN M. BEST, individually,

Plaintiffs,

v.

JOHNSON COUNTY, KANSAS; SHERIFF CALVIN HAYDEN and his successor in office, in his individual and official capacities; CAPTAIN MICHAEL LEVIN; NURSE TARA CLINE, LPN; RN STACY HEALD; and VITALCORE HEALTH STRATEGIES, LLC,

Defendants.

Case No. 2:26-cv-2137

JURY TRIAL DEMANDED

**COMPLAINT**

Plaintiffs, The Estate of Timothy Joseph Best, by and through its Personal Representative, Shawn M. Best, and Timothy Best, Sr. and Shawn M. Best, individually (collectively "Plaintiffs"), bring this action against the above-named Defendants under 42 U.S.C. § 1983 and Kansas law for the wrongful death and violation of constitutional rights of Timothy Joseph Best, who died while in custody at the Johnson County Adult Detention Center on June 5, 2024.

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 because this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

2. This Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in the District of Kansas, Kansas City Division, under 28 U.S.C. § 1391(b) because all events giving rise to these claims occurred in Johnson County, Kansas.

## PARTIES

4. Plaintiff, The Estate of Timothy Joseph Best, brings this action by and through its Personal Representative, Sharn M. Best.

5. Plaintiffs Timothy Best, Sr. and Shawn M. Best are the natural parents and heirs at law of Timothy Joseph Best.

6. Defendant Johnson County, Kansas, operates the Johnson County Adult Detention Center ("NCADC") and is responsible for the policies, training, and supervision of its employees.

7. Defendant Sheriff Calvin Hayden, and his successor in office, was, at all relevant times, the elected Sheriff of Johnson County, Kansas, and responsible for the operation of NCADC and supervision of its staff.

8. Defendant Captain Michael Levin was a supervisory officer at NCADC and participated in decision-making regarding medical care for detainees, including Timothy Best.

9. Defendant Deputy Sheriff Marcus Wright was the reporting and primary module officer on duty at the NCADC during Timothy Best's incarceration and death on June 5, 2024.

10. Defendant Nurse Tara Cline, LPN, and Defendant RN Stacy Heald were medical staff employed by or contracted through Defendant VitalCore Health Strategies, LLC, which provides medical services at NCADC.

11. Defendant VitalCore Health Strategies, LLC is a private entity contracted by Johnson County to provide medical care to inmates and detainees at NCADC and acted under color of state law for purposes of 42 U.S.C. § 1983.

## FACTUAL ALLEGATIONS

12. On May 29, 2024, Timothy Best was booked into NCADC, where he reported daily fentanyl and Xanax use. He was placed on withdrawal monitoring and prescribed medications including clonidine, ibuprofen, and antacids.

13. Between May 29 and June 5, 2024, Best exhibited repeated signs of severe withdrawal—vomiting, diarrhea, elevated heart rate, abdominal pain, and refusal of meals—without receiving appropriate physician evaluation.

14. On June 3, 2024, an abdominal x-ray (KUB) was ordered and interpreted as normal. No further diagnostic steps were taken despite ongoing complaints of abdominal pain and chest discomfort.

15. On June 5, 2024, at approximately 1:45 p.m., RN Stacy Heald evaluated Best for severe abdominal pain and shortness of breath. His heart rate was 125–130 bpm and blood pressure 150/90. Heald noted that Best's pain was worse than typical withdrawal symptoms and placed him on the list to see an advanced practice nurse the next day.

16. Throughout the afternoon of June 5, 2024, Best refused meals, moaned in pain, and told deputies he could not breathe. Nurse Tara Cline documented that he acted as though he might collapse but provided no further treatment.

17. At approximately 7:17 p.m., Deputy Marcus Wright found Best slumped against his cell door, struggling to breathe. When Wright opened the door, Best was unresponsive. A Code 900 (medical emergency) was called.

18. Deputies and medical staff initiated CPR. Nurses Cline and Heald arrived, observing fixed pupils, gray skin, and mottling, indicating Best had been in distress for several minutes before discovery.

19. Emergency responders transported Best to Olathe Medical Center at approximately 8:25 p.m. He coded multiple times and was pronounced dead at 10:24 p.m. by hospital physicians.

20. Best's death resulted from the deliberate indifference of detention and medical personnel who failed to respond to clear signs of a medical emergency.

21. Following his death, Captain Levin and Sheriff Hayden oversaw an internal investigation that revealed delays in care, failure to escalate medical complaints, and missed medication and monitoring entries.

22. Body-worn camera footage recorded by multiple detention officers between June 3 and June 5, 2024, and incorporated herein by reference, depicts Timothy Best in clear medical distress in the period leading up to the Code 900. The footage shows, among other things, his labored breathing, refusal of food, complaints of severe and unusual pain, inability to respond or ambulate normally, and physical collapse. The footage further depicts circumstances consistent with a serious and readily apparent medical emergency before any meaningful intervention occurred, and it corroborates Plaintiffs' allegations that Defendants were confronted with obvious signs that Best required immediate emergency medical care.

## COUNT I – 42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS (Against All Individual Defendants)

23. Plaintiffs incorporate all preceding paragraphs.

24. At all relevant times, Defendants Hayden, Levin, Cline, and Heald acted under color of state law.

25. Timothy Best had an objectively serious medical need, including severe opioid withdrawal, tachycardia, and respiratory distress.

26. Each individual Defendant knew of and disregarded an excessive risk to Best's health and safety, consciously failing to provide timely or adequate medical care.

27. Defendant Heald personally evaluated Mr. Best on June 5, 2024, documented tachycardia (125–130 bpm), elevated blood pressure, severe abdominal pain, and shortness of breath, and noted that his presentation was worse than typical withdrawal; nevertheless, she failed to obtain physician or advanced-practice-provider evaluation, failed to initiate emergency transfer to a hospital, and failed to order enhanced monitoring, instead deferring care until the next day.

28. Defendant Cline observed and documented that Mr. Best appeared as though he might collapse, continued to complain he could not breathe, refused meals, and moaned in pain; despite these red flags, she failed to conduct an appropriate assessment (including obtaining and trending vital signs), failed to contact a provider, and failed to initiate emergency response or hospital transport. She told Defendant Wright that Best was "fine," and later told Wright again that Best had been evaluated. She also described where told Best that Mylanta was all he was getting. Cline advised the officer to give him a boat so he could sleep on the floor and not harm himself.

29. Defendant Wright, as the primary module officer, observed Mr. Best's escalating complaints of severe abdominal pain and respiratory distress and his inability to eat and function, yet failed to promptly summon emergency medical assistance or to insist on immediate evaluation; instead, Mr. Best was left in his cell without timely medical intervention until he was found unresponsive.

30. Defendant Levin, as a supervisory captain responsible for detention operations and the response of custody staff to medical complaints, maintained and enforced practices that

discouraged or delayed escalation of inmate medical emergencies, including requiring detention staff to defer to an understaffed medical unit and tolerating repeated failures to treat obvious distress. On information and belief, Levin was aware of recurring problems with delayed medical escalation and inadequate withdrawal care at NCADC and failed to correct them.

31. Defendant Hayden, as Sheriff and final policymaker for NCADC, was responsible for ensuring constitutionally adequate medical care for detainees, including through contracting with and overseeing VitalCore. On information and belief, Hayden had notice—through prior incidents, grievances, litigation, and internal reporting—that NCADC and VitalCore staff repeatedly delayed or denied necessary medical evaluation and transport, yet failed to implement adequate training, staffing, supervision, and policies to prevent foreseeable harm, including the harm that befell Mr. Best.

32. Defendants' deliberate indifference violated Best's rights under the Fourteenth Amendment to the U.S. Constitution.

33. As a direct and proximate result, Best suffered conscious pain, suffering, and death.

**COUNT II – 42 U.S.C. § 1983 – FAILURE TO TRAIN, SUPERVISE, AND IMPLEMENT ADEQUATE POLICIES**
**(Against Johnson County and Sheriff Hayden)**

34. Plaintiffs incorporate all preceding paragraphs as well as all paragraphs in Count III.

35. Defendants knew or should have known that Deputy Wright and other detention staff exhibited dangerous or incompetent propensities, including disregard for obvious medical distress and failure to obtain timely medical care for inmates in need. *See e.g., Kearns v. Johnson County Adult Detention Center*, Case No. 05-3491-SAC (D. Kan., filed 2005) (defendants denied emergency medical services to inmate); *Crump v. Unified Government of Johnson County*, Case

No. 24-3036-JWL (D. Kan., 2024); *Crump v. VitalCore Health Strategies, LLC*, Case No. 24-3089-JWL (D. Kan. 2024).

36. Defendants were on actual and constructive notice of longstanding, systemic deficiencies in medical care at the NCADC/JCADC. By way of example, in *Kearns v. Johnson County Adult Detention Center*, Case No. 05-3491-SAC (D. Kan.), the plaintiff alleged that officials and the jail's medical contractor denied and delayed necessary medical treatment. More recently, in *Crump v. Unified Government of Johnson County*, Case No. 24-3036-JWL (D. Kan.), the plaintiff alleged completely inadequate medical care and identified policies and practices of delaying medical appointments, denying adequate pain management, understaffing qualified providers, and denying off-site care to save money; and in related litigation, Crump alleged that VitalCore maintained a policy of denying chronic care and adequate medication for pretrial detainees. Notwithstanding this notice, Defendants failed to implement effective training, supervision, staffing, and policies to prevent recurrence of the same harms.

37. Johnson County and Sheriff Hayden maintained customs, practices, and policies that fostered and perpetuated the same constitutional violations repeatedly alleged in other cases, including failures by detention officers and contracted medical staff to respond to obvious signs of medical distress. These practices reflected an entrenched culture of deliberate indifference to inmates' medical needs and included, but were not limited to:

a. Failing to train detention staff to recognize medical emergencies;

b. Failing to require timely physician review of inmates reporting chest or abdominal pain;

c. Maintaining an understaffed and inadequately supervised medical unit;

d. Tolerating a pattern of ignoring serious withdrawal symptoms.

38. These systemic deficiencies amounted to deliberate indifference and were the moving force behind Best's death.

**COUNT III – NEGLIGENT SUPERVISION**
**(Against Johnson County and Sheriff Hayden)**

39. Plaintiffs incorporate all preceding paragraphs.

40. At all relevant times, Defendants Johnson County and Sheriff Hayden employed deputies, detention officers, and medical contractors responsible for the care and custody of detainees, including Deputy Marcus Wright.

41. Defendants owed a duty to exercise reasonable care in the hiring, training, supervision, and retention of its employees to ensure that they did not pose an unreasonable risk of harm to detainees.

42. Defendants knew or should have known that Deputy Wright and other detention staff exhibited dangerous or incompetent propensities, including disregard for obvious medical distress and failure to obtain timely medical care for inmates in need. *See e.g., Kearns v. Johnson County Adult Detention Center*, Case No. 05-3491-SAC (D. Kan., filed 2005) (defendants denied emergency medical services to inmate); *Crump v. Unified Government of Johnson County*, Case No. 24-3036-JWL (D. Kan., 2024); *Crump v. VitalCore Health Strategies, LLC*, Case No. 24-3089-JWL (D. Kan. 2024).

43. These and other incidents, grievances, and lawsuits placed Defendants on notice that detention staff and medical contractors at NCADC were failing to recognize and respond to medical emergencies, including withdrawal-related crises, abdominal pain, and respiratory distress. Despite this notice, Defendants failed to supervise, discipline, retrain, and otherwise correct those practices, creating a foreseeable risk that detainees like Mr. Best would be denied timely emergency care.

44. Defendant Hayden knew or should have known that these deputies lacked adequate training in identifying and responding to medical emergencies, and that they exhibited a pattern of indifference toward inmates experiencing withdrawal, abdominal pain, or breathing difficulties.

45. Despite this knowledge, Defendant Hayden failed to take corrective or disciplinary action, failed to provide adequate retraining or supervision, and continued to assign the same deputies to duties involving inmate health and safety, thereby creating an undue risk of harm to others in custody.

46. On June 5, 2024, while assigned as module officer, Deputy Wright observed Timothy Best repeatedly complain of severe abdominal pain, shortness of breath, and inability to eat, yet failed to summon emergency medical assistance or ensure timely hospital evaluation.

47. Other deputies, including Deputy Murphy, observed Mr. Best's deteriorating condition, recognized his behavior as abnormal, and nonetheless failed to intervene or to insist that medical personnel provide immediate treatment.

48. Defendants Johnson County's and Sheriff Hayden's failure to properly supervise and discipline these deputies—despite prior incidents and obvious need for medical-care training—was a direct and proximate cause of the constitutional and common-law injuries sustained by Mr. Best.

49. The harm that resulted—the denial of necessary medical care and death of Mr. Best—was within the foreseeable risk created by Defendant Hayden's negligent supervision of detention personnel known or reasonably known to disregard inmate medical needs.

50. As a direct and proximate result of Defendant Hayden's negligence, Timothy Best suffered prolonged and unnecessary pain, loss of chance of survival, and death, causing his estate

and surviving family members to sustain substantial damages including loss of life, loss of companionship, mental anguish, and funeral and medical expenses.

51. The harm suffered was within the risk created by Defendant's failure to supervise employees known or reasonably known to disregard the medical needs and safety of inmates.

**COUNT IV – WRONGFUL DEATH**
**(K.S.A. § 60-1901 et seq. – Against All Defendants)**

52. Plaintiffs incorporate all preceding paragraphs.

53. Defendants owed Timothy Best a duty to provide adequate medical care and to protect him from serious harm while in custody.

54. Defendants breached that duty by failing to provide necessary medical attention and monitoring.

55. As a result, Best died, causing Plaintiffs to suffer pecuniary loss, mental anguish, and loss of companionship.

56. Plaintiffs seek all damages allowed under Kansas law, including funeral expenses, lost companionship, and non-economic damages.

**COUNT V – SURVIVAL ACTION**
**(K.S.A. § 60-1801 – Against All Defendants)**

57. Plaintiffs incorporate all preceding paragraphs.

58. Before his death, Timothy Best experienced conscious pain and suffering due to Defendants' deliberate indifference.

59. The Estate of Timothy Best is entitled to recover for those pre-death injuries and suffering under K.S.A. § 60-1801.

**DAMAGES**

60. Plaintiffs seek compensatory damages, including for physical pain, emotional distress, loss of life, loss of companionship, and other economic and non-economic harms.

61. Plaintiffs further seek punitive damages against all individual Defendants and Defendant VitalCore Health Strategies, LLC, to punish and deter similar conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a. Enter judgment in favor of Plaintiffs and against Defendants;

b. Award compensatory and punitive damages in an amount to be determined by a jury;

c. Award costs, reasonable attorneys' fees, and expenses under 42 U.S.C. § 1988;

d. Grant such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Thomas Porto*

Thomas Porto, KS #26214
**THE POPHAM LAW FIRM**
712 Broadway, Suite 100
Kansas City, MO 64105
T: 816-221-2288
F: 816-221-3999
tporto@pophamlaw.com

Andrew Schermerhorn, KS #24416
**SCHERMERHORN LAW, PC**
4520 Main St., Ste. 700
Kansas City, MO 64111
T: 816-285-6022
andy@schermlaw.com

**Attorneys for Plaintiff**