**IN THE UNITED STATES COURT**
**DISTRICT OF KANSAS**

| | | |
|---|---|---|
| THE ESTATE OF TIMOTHY JOSEPH BEST, II, by and through its personal representative, SHAWN M. BEST, et al.<br>Plaintiff,<br><br>v.<br><br>BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JOHNSON COUNTY, KANSAS, et al.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 2:26-cv-2137 |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendants, Board of County Commissioners of the County of Johnson County, Kansas ("BOCC"), Calvin Hayden, Byron Roberson, Michael Levin and Marcus Wright[1] (collectively, "the County Defendants") submit this memorandum in support of their motion to dismiss:

**NATURE OF THE CASE**

Timothy Joseph Best died in custody at the Johnson County Adult Detention Center ("NCADC") on June 5, 2024, while on opioid withdrawal monitoring. Plaintiffs assert § 1983 civil rights claims and state tort claims against multiple defendants, including the County Defendants. The FAC is legally deficient as to each County Defendant. Plaintiffs' state law tort claims (Counts III–V) must be dismissed for lack of subject matter jurisdiction because Plaintiffs never filed the written notice of claim required by the Kansas Tort Claims Act, K.S.A. 12-105b, before commencing this action. Plaintiffs' Monell claim (Count II) fails because the FAC pleads only conclusory labels unsupported by any specific policy, prior incident, or factual predicate, and the

[1] Deputy Wright is not named in the caption of the First Amended Complaint. He is, however, identified as a Defendant in the body of the complaint and is referred to as "Defendant Wright" throughout. Out of an abundance of caution, Johnson County Defendants include the foregoing arguments on his behalf to the extent the Court determines he is subject to the claims asserted.

two lawsuits cited as notice are either nearly twenty years old or was decided in the County Defendants' favor. The individual-capacity claims against Sheriff Hayden, Captain Levin and Deputy Wright (Count I) fail on qualified immunity grounds: neither Hayden nor Levin is alleged to have had any personal involvement in the events of June 5, 2024, and Wright deferred to a licensed nurse's express assessment that Best was "fine"—a fact Plaintiffs' own complaint admits.

## ARGUMENTS AND AUTHORITIES

## I. Legal Standards.

### a. Subject matter jurisdiction under 12(b)(1).

A Rule 12(b)(1) motion may take the form of a facial or factual attack on subject matter jurisdiction. *Holt v. United States*, 46 F.3d 1000, 1002–1003 (10th Cir. 1995). On a factual attack, the Court is not bound to accept the complaint's allegations as true and may consider affidavits and other evidence outside the pleadings without converting the motion to a motion for summary judgment. *Id.* at 1003.

### b. Failure to state a claim under 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court assumes as true all well-pleaded factual allegations and views them in the light most favorable to the non- moving party. *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011). To survive a motion to dismiss, a Complaint must present allegations that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555, 570 (2007). But, the Court is not bound to accept as true "legal conclusions couched as a factual allegation . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II. Plaintiff's state law claims must be dismissed for lack of subject matter jurisdiction for failure to comply with the Kansas Tort Claims Act.

Counts III (Negligent Supervision), IV (Wrongful Death), and V (Survival Action) are state law tort claims governed by the Kansas Tort Claims Act, K.S.A. 12-101 *et seq.* The KTCA provides the exclusive remedy for tort claims against governmental entities and expressly conditions the right to sue upon the prior filing of a written notice of claim. K.S.A. 12-105b(a).

Compliance with the KTCA notice requirement is a jurisdictional prerequisite, not an affirmative defense. *Sleeth v. Sedan City Hosp.*, 317 P.3d 782, 788–89 (Kan. 2014). This jurisdictional bar applies in federal court. *Lara v. Unified Sch. Dist. No. 501*, 350 F. App'x 280, 284 (10th Cir. 2009). Federal courts in this district have consistently dismissed state tort claims for failure to comply with K.S.A. 12-105b. *See Phillips v. Humble*, 587 F.3d 1267, 1274 (10th Cir. 2009); *Owen v. Smith*, No. 22-1201-JAR-KGG, 2022 WL 17403161, at *4 (D. Kan. Dec. 2, 2022); *Harewood v. Cloud Cty. Comm. College*, No. 18-4075-SAC, 2019 WL 2717165, at *4–5 (D. Kan. June 28, 2019); *Talavera v. SW Med. Ctr.*, No. 09-2572-JWL, 2010 WL 3001723, at *3 (D. Kan. July 28, 2010); *Wanjiku v. Johnson County*, 173 F. Supp. 3d 1217, 1236–37 (D. Kan. 2016).

County Defendants submit the affidavit of Amy Meeker-Berg, Johnson County Clerk, attesting that Johnson County has never received a notice of claim from Plaintiffs. (Exhibit A). Because no notice was filed, the 120-day statutory review period under K.S.A. 12-105b(d) was never triggered. This Court lacks jurisdiction over Counts III, IV, and V. Dismissal should be with prejudice—the KTCA requires notice *before* commencement of the action, and the deficiency cannot be cured by amendment. *Wanjiku*, 173 F. Supp. 3d at 1237; *Sleeth*, 317 P.3d at 789.

### III. The *Monell* claim against Sheriff Roberson and the BOCC[2] fails to state a claim.

[2] The BOCC is also an improper party under Kansas law. The Kansas legislature vested custody of county jails exclusively in the Sheriff, not the BOCC. K.S.A. 19-811; *Myer v. Nava*, 518 F.Supp. 2d 1279, 1287 (D. Kan. 2007). Additionally, asserting *Monell* claims against both Sheriff Roberson and the BOCC is redundant. *Burns v. Bd. of Cty. Comm'rs of Jackson Cty.*, 197 F.Supp. 2d 1278, 1296-97 (D. Kan. 2007), *aff'd*, 507 F.3d 1257 (10th Cir. 2007). The BOCC should be dismissed on either basis.

**a. The *Monell* allegations are conclusory and insufficient under *Twombly* and *Iqbal*.**

Municipal liability under § 1983 is not vicarious. A municipality cannot be held liable solely because it employs a tortfeasor. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, a plaintiff must establish that the municipality's own unconstitutional policy or custom was the direct cause or moving force behind the alleged injury. *Id.* at 690, 694. To state a Monell claim, a plaintiff must plead facts establishing (1) an official policy or custom, (2) causation, and (3) deliberate indifference on the part of the municipality. *Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1184 (10th Cir. 2020). A policy or custom may be established through: (1) a formal regulation or policy statement; (2) a widespread and well-settled practice within the municipality; (3) decisions of employees with final policymaking authority; (4) ratification of subordinates' actions by a final policymaker; or (5) failure to adequately train or supervise employees resulting from deliberate indifference to potential constitutional injuries. *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188–89 (10th Cir. 2010). The FAC's Count II presses two theories: failure to train and supervise, and failure to implement adequate policies. Neither is plausibly pleaded.

**i. The failure-to-train and failure-to-supervise theories fail.**

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Failure-to-train theories require "considerably more proof than [a] single incident" to establish both fault and causation. *City of Okla. City v. Tuttle*, 471 U.S. 808, 824 (1985). A plaintiff must plead facts showing that "a municipality's failure to train its employees in a relevant respect . . . amounts to deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Connick*, 563 U.S. at 61. Deliberate indifference in this context requires either a specific pattern

of prior similar constitutional violations, or a showing that the need for training was so patently obvious that the municipality can be said to have consciously disregarded an inevitable constitutional risk. *City of Canton v. Harris*, 489 U.S. 378, 389–90 (1989). A municipality is liable only when evidence demonstrates it "deliberately or consciously fails to act when presented with an obvious risk of constitutional harm which will almost inevitably result in constitutional injury of the type experienced by the plaintiff." *Hollingsworth v. Hill*, 110 F.3d 733, 745 (10th Cir. 1997).

Ordinarily, deliberate indifference in the failure-to-train context requires a pattern of similar constitutional violations by untrained employees that places the municipality on notice that its training is constitutionally deficient. *Connick*, 563 U.S. at 62. The FAC pleads no such pattern. The only prior incidents Plaintiffs identify are *Kearns* (filed 2005, no alleged outcome, no alleged similarity to withdrawal-related care failures) and *Crump* (filed 2024, decided by this Court in the County Defendants' favor). *Crump v. Johnson Cnty. Bd. of Comm'rs*, No. 24-3036-EFM, 2025 WL 1555025 (D. Kan. June 2, 2025), *reconsideration denied*, 2025 WL 2022807 (D. Kan. July 18, 2025). A case won by the defendants on the merits does not establish a pattern of unconstitutional conduct, it negates one. And a nearly twenty-year-old lawsuit whose outcome Plaintiffs do not allege cannot serve as the foundation for the specific type of deliberate indifference that Best's death allegedly reflects. "[P]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*." *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). The FAC supplies nothing more.

Because they cannot establish a pattern, Plaintiffs are left to rely on the narrow single-incident exception, which applies only where "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983" without any prior violations. *Connick*, 563 U.S. at 64; *City of Canton*, 489 U.S. at 391–92. The Tenth Circuit has applied this

exception only in a "narrow range of circumstances" in which employees are tasked with a specific function that would predictably and inevitably produce constitutional violations in the absence of training. *Valdez v. Macdonald*, 66 F.4th 796, 816–17 (10th Cir. 2023). The FAC does not come close to that showing.

The FAC identifies no specific training decision, no particular supervisory omission and no structural deficiency that would inevitably or predictably lead to constitutional injury. FAC ¶¶ 37–39. It alleges in general terms that the County failed to train detention staff to recognize medical emergencies and to require timely physician review of inmates with withdrawal symptoms. FAC ¶ 38(a)–(b). But "[i]t is not enough for a plaintiff to allege that an officer's wrong decision injured a citizen during a predictable situation." *Teetz v. Bd. of Cnty. Comm'rs of Sedgwick Cnty., Kan.*, No. 22-2370-JWB, 2023 WL 7698030, at *8 (D. Kan. Nov. 15, 2023). Even a list of alleged training inadequacies is insufficient absent allegations that policymakers were specifically aware of the deficiencies or that the need for additional training was so obvious as to establish deliberate indifference. *Carr v. Castle*, 337 F.3d 1221, 1229–30 (10th Cir. 2003); *Herbel v. City of Marion, Kan.*, No. 23-1218-JWB, 2024 WL 4416849, at *26 (D. Kan. Oct. 4, 2024) (conclusory statements that municipality failed to train officers insufficient to survive motion to dismiss).

The FAC's failure-to-train theory rests exclusively on the individual decisions of Nurse Cline, RN Heald, and Deputy Wright on June 5, 2024 and it conflates their alleged individual errors with institutional training failure. That conflation is not permitted. "Allegations of individual error do not establish that the need for additional training was so obvious that the [municipality] acted with deliberate indifference." *See City of Canton*, 489 U.S. at 391 ("adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable"). Nor does alleging that staff failed to follow protocols

plausibly show that training itself was deficient. Individual misconduct and municipal liability are distinct categories under *Monell*, and the FAC impermissibly collapses the two. The absence of any plausible allegation that Johnson County's training was specifically deficient—and that policymakers knew it—is fatal to the failure-to-train theory under Count II.

**ii. The failure to implement adequate policies theory fails.**

To the extent Plaintiffs predicate Count II on a formal unconstitutional policy, the claim fails at the threshold. An official policy for purposes of *Monell* liability refers to "formal rules or understandings, often but not always committed to writing, that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986). The FAC identifies no formal directive, regulation, or established rule governing medical care at NCADC that could constitute such a policy. FAC ¶¶ 38(a)–(d). It merely enumerates four categories of alleged deficiencies in general terms: "failing to train detention staff to recognize medical emergencies;" "failing to require timely physician review;" "maintaining an understaffed . . . medical unit;" and "tolerating a pattern of ignoring serious withdrawal symptoms." FAC ¶ 38(a)–(d). These are labels, not facts, and "labels and conclusions" do not suffice to plead a Monell policy. *Iqbal*, 556 U.S. at 678.

Plaintiffs' informal-policy theory fares no better. Establishing an unwritten custom or practice requires pleading facts that give rise to a plausible inference that a "widespread, permanent, and well-settled" practice attributable to the municipality exists. *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1290 (10th Cir. 2019). As this Court has explained:

> "[T]he plaintiff cannot simply allege that there is a policy in place, but, rather, must plead facts that, if true, would give rise to a plausible inference that such a policy exists. . . . With informal, unwritten policies, customs, or practices, the plaintiff can plead either a pattern of multiple similar instances of misconduct . . . or use other evidence, such as . . . statements attesting to the policy's existence."

*Pino v. Weidl*, No. 20-2044-JAR-GEB, 2020 WL 3960424, at *6–7 (D. Kan. July 13, 2020). The FAC meets none of these requirements. It pleads no pattern of multiple similar incidents of withdrawal-related medical neglect at NCADC; it identifies no statement from any Johnson County official attesting to the existence of an indifference policy; and it cites no prior incident in which a detainee's medical emergency was mishandled in a manner comparable to the allegations here. The entire factual basis for Plaintiffs' informal-custom theory is the conduct of Nurse Cline, RN Heald and Deputy Wright during a single six-hour period on June 5, 2024. Single-encounter allegations "do not plausibly allege an informal custom amounting to a widespread practice." *Dechant v. Grayson*, No. 20-CV-02183-HLT, 2021 WL 63280, at *2 (D. Kan. Jan. 7, 2021); *see also Waller*, 932 F.3d at 1290 (one prior similar incident insufficient to plausibly allege "widespread practice" so "permanent and well settled as to constitute a custom or usage with the force of law"). Their custom-and-practice theory, premised entirely on the events of June 5, 2024 and two inadequate prior lawsuits, does not plausibly state a Monell claim. Count II must be dismissed.

## IV. <u>The individual-capacity claims against Sheriff Hayden, Captain Levin and Deputy Wright fail on qualified immunity grounds.</u>

Qualified immunity is a powerful defense that protects public servants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "the norm," and officials enjoy a presumption of immunity. *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010) (quoting *Harlow*, 457 U.S. at 807). A plaintiff overcomes this presumption "by carrying the heavy burden of showing both that (1) the defendant-[actor] in question violated one of his constitutional rights, and (2) the infringed right at issue was clearly established at the time of the allegedly unlawful activity such that 'every

reasonable official would have understood that what he was doing' violated the law." *Kerns v. Bader*, 663 F.3d 1173, 1180 (10th Cir. 2011) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, (2011)). The Court may address the two prongs in any order. *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009).

**a. The supervisory liability claims fail.**

For supervisory liability, "[p]ersonal participation is an essential allegation in a 1983 claim." *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). A supervisor cannot be held vicariously liable for the constitutional violations of subordinates. *See Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006). Supervisory liability under § 1983 may attach to a defendant-supervisor who creates, promulgates, or implements a policy that injures that plaintiff's constitutional rights. *Cox v. Glanz*, 800 F.3d 1231, 1248 (10th Cir. 2015). A plaintiff must "show an 'affirmative link' between the supervisor and the constitutional violation" to hold the supervisor liable. *Est. of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014). To show an "affirmative link" between a supervisor and the alleged constitutional injury, a plaintiff must plausibly allege: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199–200 (10th Cir. 2010).

**i. Sheriff Hayden.**

Plaintiffs assert deliberate indifference against Sheriff Hayden under Count I and a failure-to-train, failure-to-supervise theory under Count II. Although framed separately, the two counts are functionally identical as to Hayden: both rely on the same factual allegations, both are directed at his supervisory role as final policymaker for NCADC, and neither identifies a single specific act

or omission by Hayden personally connected to the events of June 5, 2024. FAC ¶¶ 32, 35–39. Hayden is not alleged to have been present at NCADC on June 5, to have interacted with Best, to have directed any employee's response to Best's condition or to have made any specific decision that contributed to Best's death. His liability under both counts is premised entirely on his status as Sheriff, which is *respondeat superior*, a theory categorically unavailable under § 1983. Because the factual predicate is the same, the analysis that defeats one count defeats the other.

The operative allegation supporting both counts is that Hayden had notice through prior incidents, grievances, litigation and internal reporting that NCADC and VitalCore staff repeatedly delayed or denied necessary medical evaluation and transport. FAC ¶ 32. The same assertion appears, recast in policy language, in Count II's allegation that Hayden was on actual and constructive notice of longstanding, systemic deficiencies in medical care. FAC ¶ 37. Under *Cox*, deliberate indifference in the supervisory context requires actual, not constructive, knowledge of a pattern of prior similar constitutional violations. 800 F.3d at 1249. The FAC contains no allegations identifying any specific grievance, incident report or internal communication that Hayden personally reviewed, specific prior constitutional violation of which he was aware or specific corrective decision he made or consciously declined to make. That is precisely the kind of conclusory notice allegation that *Cox* held insufficient. *Id.* at 1248–50

The two prior lawsuits Plaintiffs identify as the basis for Hayden's notice do not supply the subjective awareness *Farmer* requires. *Kearns* was filed nearly twenty years before Best's death, has no alleged outcome and involves no alleged factual similarity to withdrawal-related care failures. *Crump* was filed two months after Best's death and was decided by this Court in the County Defendants' favor. 2025 WL 1555025. A lawsuit filed after the harm cannot establish pre-existing notice and a lawsuit won by the defendants cannot establish that Hayden was on notice of

a proven and persisting constitutional deficiency he consciously chose to ignore. Plaintiffs must plead that Hayden actually knew of and consciously disregarded a specific, ongoing constitutional risk—not merely that lawsuits were filed. *Tafoya*, 516 F.3d at 916.

The FAC's remaining specific reference to Hayden—that he "oversaw an internal investigation" following Best's death, FAC ¶ 22—is post-incident conduct that cannot establish pre-incident deliberate indifference under either count. What Hayden learned from an after-action review is irrelevant to what he personally knew and consciously disregarded on or before June 5, 2024.

Both counts independently fail on the clearly established prong. No Supreme Court or Tenth Circuit decision has clearly established, under materially similar facts, that a county sheriff violates the Fourteenth Amendment by failing to implement specific training or staffing reforms regarding contracted jail medical services absent a prior adjudication of unconstitutional conduct and without particularized, personal knowledge of a specific ongoing risk. Qualified immunity bars the individual-capacity claims against Hayden under both Count I and Count II.

**ii. The supervisory liability claim against Captain Levin fails To state a claim.**

Every meaningful allegation against Captain Levin in Count I is made solely on information and belief, is entirely conclusory or concerns post-incident conduct. FAC ¶¶ 9, 22, 31. The FAC does not allege that Levin was present at NCADC during Best's crisis on June 5; that Levin was personally notified of Best's deteriorating condition before the Code 900; that Levin interacted with Best, Nurse Cline, RN Heald or Deputy Wright on that date; that Levin issued any specific directive or policy governing the events of June 5; or that any identifiable act or omission by Levin was a proximate cause of Best's death.

What the FAC does allege is that Levin "maintained and enforced practices that discouraged or delayed escalation of inmate medical emergencies" and "was aware of recurring problems with delayed medical escalation and inadequate withdrawal care at NCADC and failed to correct them." FAC ¶ 31. These are legal conclusions dressed in factual clothing. Pleading on information and belief does not transform a conclusory assertion into a plausible factual claim; the underlying facts must make the conclusion plausible. *Iqbal*, 556 U.S. at 678. The FAC supplies no such facts as to Levin.

The FAC's sole concrete reference to Levin is that he oversaw an internal investigation after Best's death. FAC ¶ 22. Post-incident oversight of a review process cannot establish that Levin had pre-existing, subjective awareness of an excessive risk to Best's health and consciously disregarded it before the Code 900 was called. The supervisory liability claim against Levin in Count I fails to state a claim and must be dismissed.

**b. Plaintiffs fail to state a constitutional violation against Deputy Wright.**

Under the Fourteenth Amendment, a pretrial detainee is entitled to the same degree of protection regarding medical care as a convicted inmate under the Eighth Amendment. *Frohmader v. Wayne*, 958 F.2d 1024, 1028 (10th Cir. 1992). The government fails to meet its constitutional obligation when a governmental actor acts with "deliberate indifference" to the serious medical needs of those in its custody. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). "Deliberate indifference" lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). A finding of deliberate indifference requires more than mere negligence and implicates both objective and subjective components. *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000).

To satisfy the objective component, a plaintiff must demonstrate that the alleged deprivation was "sufficiently serious." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). The Tenth Circuit has recognized that "[n]o Tenth Circuit authorities have concluded that heroin withdrawal presents a 'sufficiently serious medical need.'" *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1029 (10th Cir. 2020). For purposes of this motion and consistent with the Court's approach in *Quintana*, Deputy Wright does not dispute that severe opioid withdrawal may present a sufficiently serious medical need. The claim fails on the subjective prong.

The subjective component requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837 (emphasis added). This component cannot be satisfied by obviousness or constructive notice alone. *Id.* at 826. "[A]n official's failure to alleviate a significant risk of which he was unaware, no matter how obvious the risk or how gross his negligence in failing to perceive it, is not an infliction of punishment and therefore not a constitutional violation." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). Critically, a negligent failure to provide adequate medical care, even one rising to the level of malpractice, does not give rise to a constitutional violation. *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999).

The FAC alleges that Wright observed Best's withdrawal symptoms on June 5, 2024 and reported the situation to the module's assigned medical staff. FAC ¶¶ 17, 30. But the FAC also alleges that Nurse Cline personally evaluated Best, told Wright that Best was "fine," confirmed to Wright a second time that Best had been evaluated and directed Wright to provide Best with a "boat" so that he could rest on the floor. FAC ¶ 29. These allegations directly negate the subjective component of the claim. An official cannot subjectively know of and disregard an excessive risk

to inmate health when the licensed medical professional assigned to that inmate has expressly communicated that no such risk exists.

Plaintiffs' invocation of body-worn camera footage depicting Best in "clear medical distress" before the Code 900 does not alter this conclusion. FAC ¶ 23. The footage's relevance runs to the objective question of whether distress was apparent, not the subjective question of what Wright personally understood that distress to mean after receiving Nurse Cline's clearance. The Tenth Circuit has made clear that symptoms common to opioid withdrawal, including vomiting, abdominal pain, and physical weakness, do not by themselves present an obvious risk of severe and life-threatening deterioration. *Quintana*, 973 F.3d at 1029; *Strain v. Regalado*, 977 F.3d 984, 994 (10th Cir. 2020) (frequent vomiting does not present an "obvious risk" of severe withdrawal). Wright is a lay custody officer with no clinical training. The constitutional standard does not require a non-medical detention officer to override a licensed nurse's express clinical determination based on lay observation of the same symptoms the nurse has just evaluated.

Reduced to its essence, the claim against Wright is that he should have independently determined that Nurse Cline's assessment was wrong and summoned emergency services over her express clearance. That is a negligence theory. "A negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins*, 165 F.3d at 811. The Tenth Circuit has drawn a "critical distinction between allegedly inadequate (or even negligent) medical care, and a complete or total failure to obtain medical care." *Strain*, 977 F.3d at 995–96. Wright did not completely fail to obtain medical care for Best. He escalated Best's condition to the nurse responsible for his care and received her express professional clearance. FAC ¶ 29. His subsequent failure to override that clearance sounds in negligence, not deliberate indifference.

The claim against Wright independently fails on the clearly established prong. No Supreme Court or Tenth Circuit decision has held, under facts materially similar to those alleged here, that a non-medical detention officer violates the Fourteenth Amendment by relying on a licensed nurse's express assessment that a detainee does not require emergency intervention. In the absence of such authority, the constitutional question was not "beyond debate," *Mullenix*, 577 U.S. at 13–14, and qualified immunity must be granted.

## CONCLUSION

For the foregoing reasons, County Defendants respectfully request the Court dismiss the State law claims asserted against these Defendants for lack of subject matter jurisdiction and dismiss the federal claims for failure to plausibly state a claim.

Respectfully submitted,

FISHER, PATTERSON, SAYLER & SMITH, LLP

/s/Alex S. Gilmore
Alex S. Gilmore KS #27334
Kirk T. Ridgway KS #17172
9393 W. 110th St., Suite 300
Overland Park, Kansas 66210
(913) 339-6757; Fax: (913) 339-6187
agilmore@fpsslaw.com
kridgway@fpsslaw.com
**ATTORNEY FOR COUNTY DEFENDANTS**

## CERTIFICATE OF SERVICE

I certify that on June 1, 2026, I electronically filed the foregoing with the Court and that an electronic notice of filing and a copy of the foregoing will automatically be sent to:

Thomas Porto
THE POPHAM LAW FIRM
712 Broadway, Suite 100
Kansas City, MO 64105
T: 816-221-2288
tporto@pophamlaw.com

Andrew Schermerhorn
SCHERMERHORN LAW, PC
4520 Main St., Ste. 700
Kansas City, MO 64111
T: 816-285-6022
andy@schermlaw.com
**ATTORNEYS FOR PLAINTIFF**

John Hicks
Sarah Wood
NORRIS KEPLINGER
HICKS & WELDER, LLC
11551 Ash Street
Becker Building, Suite 200
Leawood, KS 66211
jh@nkfirm.com
swood@nkfirm.com
**ATTORNEYS FOR DEFENDANTS VITAL CORE HEALTH STRATEGIES, TARA CLINE AND STACY HEALD**

/s/Alex S. Gilmore
Alex S. Gilmore