**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**KANSAS CITY DIVISION**

THE ESTATE OF TIMOTHY JOSEPH BEST, II, by and through its Personal Representative, SHAWN M. BEST, et al.

Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JOHNSON COUNTY, KANSAS, et al,

Defendants.

Case No. 2:26-cv-2137

**PLAINTIFFS' MEMORANDUM IN OPPOSITION**
**TO COUNTY DEFENDANTS' MOTION TO DISMISS**
**AND PLAINTIFFS' REQUEST TO AMEND TO CONFORM THE PLEADINGS**

Plaintiffs oppose the Motion to Dismiss filed by the County Defendants. At this stage, the Court must accept the well-pleaded facts as true, draw reasonable inferences in Plaintiffs' favor, and ask only whether the Complaint states plausible claims for relief. It does.[1]

Timothy Best did not die after a sudden, unforeseeable medical event. According to the First Amended Complaint (FAC), he entered NCADC reporting daily fentanyl and Xanax use, FAC ¶ 13, was placed on withdrawal monitoring, *id.*, and then displayed escalating medical symptoms for days: vomiting, diarrhea, elevated heart rate, abdominal pain, refusal of meals, chest discomfort, severe abdominal pain, shortness of breath, moaning, inability to eat, inability to function normally, and ultimately collapse. FAC ¶¶ 14-18. On June 5, 2024, RN Heald documented tachycardia of 125-130 beats per minute, elevated blood pressure, severe abdominal pain, and

[1] Plaintiffs acknowledge that, as explained in Plaintiffs' Request to Amend which is set forth below, certain County Defendants may be removed from certain counts. Except as set forth in that request, Plaintiffs oppose the County Defendants' Motion to Dismiss.

shortness of breath, and noted that Best's presentation was worse than typical withdrawal. FAC ¶ 16. Yet Best was merely placed on a list to see an advanced-practice provider the next day. *Id.* Nurse Cline later observed and documented that Best appeared as though he might collapse, continued to complain that he could not breathe, refused food, and moaned in pain. FAC ¶ 17. Deputy Wright, the primary module officer, personally observed Best's worsening condition throughout the afternoon and evening, including his inability to eat or function normally, his labored breathing, and his eventual collapse. FAC ¶¶ 18, 30. Body-worn camera footage incorporated into the Complaint confirms obvious medical distress before meaningful intervention occurred. FAC ¶ 23.

The County Defendants ask the Court to treat those facts as medical negligence at most, to isolate each Defendant's conduct from the others, and to draw inferences in Defendants' favor. That is not the Rule 12 standard. The Complaint plausibly alleges that individual Defendants knew of and disregarded an excessive risk to Best's health and safety; that the County and Sheriff maintained deficient policies, customs, training, supervision, staffing, and escalation practices that caused the violation; and that Best suffered conscious pain, suffering, and death as a result.

The Motion should be denied. At minimum, if the Court finds any pleading deficiency, Plaintiffs should be granted leave to amend rather than dismissal with prejudice.[2]

## I. Governing Standard

At the outset, it bears emphasis that the County Defendants have filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6), not a motion for summary judgment. Their Rule 12(b)(1)

[2] Plaintiffs note that, at the motion to dismiss stage, the issue is not whether plaintiff will prevail, but whether he is entitled to offer evidence to support his claims. *Kocsis v. Sedgwick Cnty., Kan.*, No. 14-2167, 2015 WL 3776507, at *2 (D. Kan. June 17, 2015) "This is important because, here, defendants' arguments are better suited in a motion for summary judgment with a more fully-developed record. Indeed, almost every case defendants cite in support of their arguments is a case decided at the summary judgment stage—not the motion to dismiss stage." *Id.*

challenge is limited to the Court's subject-matter jurisdiction over the state-law claims based on K.S.A. 12-105b. Their Rule 12(b)(6) arguments, however, must be tested against the pleadings—not against Defendants' preferred factual narrative, competing inferences, or anticipated evidentiary defenses. At this stage, the Court accepts Plaintiffs' well-pleaded factual allegations as true, *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008), views those allegations in the light most favorable to Plaintiffs, *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008), and asks only whether the First Amended Complaint states plausible claims for relief. *Id.* Defendants may ultimately dispute what the video shows, what each actor knew, whether the County's policies and practices caused Best's death, or whether their conduct was reasonable. But those are merits questions for discovery and summary judgment, not grounds to dismiss a factually supported complaint at the pleading stage. The issue is not whether Plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims. *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005).

Qualified immunity does not alter the analysis. The Court' must still accept Plaintiffs' facts as true and limit its assessment to the allegations contained within the four corners of the complaint. *Archuleta*, 523 F.3d at 1281. A plaintiff defeats qualified immunity at the motion-to-dismiss stage by alleging facts that plausibly establish a constitutional violation and by showing that the right was clearly established. *Id.* at 1283; *Brown v. Montoya*, 662 F.3d 1152, 11624 (10th Cir. 2011). Courts in the Tenth Circuit generally proceed in two steps. First, it considers whether the conduct alleged constitutes a constitutional violation; then second, if it concludes that it does do, it addresses whether the constitutional right violated was clearly established. *See e.g., Archuleta*, 523 F.3d at 1283. Where the allegations plausibly support competing inferences about

what a defendant knew, what was obvious, what a reasonable official would have understood, or whether delay caused harm, dismissal is inappropriate.

## II. Constitutional Right to Adequate Medical Care for Pretrial Detainees is Clearly Established

Turning first to the second step, the constitutional right to adequate medical care while in custody is well established. *See Estelle v. Gamble*, 429 U.S. 97 (1976). Although a pretrial detainee's claim arises under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment, the Tenth Circuit applies the same deliberate-indifference framework used in Eighth Amendment medical-care cases. *Est. of Beauford v. Mesa Cnty., Colorado*, 35 F.4th 1248, 1262 (10th Cir. 2022).

A jail official violates that right by acting with deliberate indifference to a detainee's serious medical needs. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). Deliberate indifference is more than negligence, but it does not require proof of purpose to harm; it lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id*. at 752 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). The claim has both objective and subjective components. *Farmer*, 511 U.S. at 834. The objective component asks whether the medical need was sufficiently serious while the subjective component asks whether the defendant had a sufficiently culpable state of mind with respect to the risk. *Est. of Beauford*, 35 F.4th at 1262 (quoting *Prince v. Sheriff of Carter Cnty*., 28 F.4th 1033, 1044 (10th Cir. 2022).

"A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (internal quotation omitted). A delay in treatment, even a brief delay (e.g., 15 minutes), may also satisfy the objective component where the delay results in substantial harm. *Mata*, 427 F.3d at 751.

"Even a brief delay in treatment can be unconstitutional." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023).

## III. Plaintiffs Plausibly Allege Deliberate Indifference to Serious Medical Need (Count I)

### A. Best's medical need was objectively serious.

"A medical need is objectively serious if it has been diagnosed by a physician as mandating treatment or one that is so obvious that even a layperson would recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). A delay in treatment may also satisfy the objective component where the delay results in substantial harm. *Mata*, 427 F.3d at 751

The Motion does not dispute that severe opioid withdrawal may present an objectively serious medical need. ECF No. 29 at 13. But the FAC alleges far more than generalized withdrawal discomfort. Best had persistent vomiting, diarrhea, severe abdominal pain, chest discomfort, shortness of breath, refusal of meals, inability to function normally, tachycardia of 125-130 beats per minute, blood pressure of 150/90, moaning, labored breathing, signs that he might collapse, and ultimately gray skin, fixed pupils, mottling, and cardiac arrest. FAC ¶¶ 14-19.

Viewed in the light most favorable to Plaintiffs, the FAC properly alleges that Best's medical need was objectively serious. *See Mata v. Saiz*, 427 F.3d 745, 753–54 (10th Cir. 2005) (concluding, *on a motion for summary judgment*, that chest pain was sufficiently serious to satisfy the objective prong independently of a subsequent heart attack); *Al-Turki v. Robinson*, 762 F.3d 1188, 1193 (10th Cir. 2014) (concluding, *on a motion for summary judgment*, that pain satisfied the objective prong when the inmate collapsed, vomited, and suffered severe abdominal pain over a period of five hours), *Lopez-Aguirre v. Bd. of Cnty. Comm'rs of Shawnee Cnty., Kan.*, No. 12-2752-JWL, 2013 WL 1668239, at *4 (D. Kan. Apr. 17, 2013) (finding that where the decedent

perished within two days after his detention ended, the harm suffered by decedent was sufficiently serious under the objective prong of the applicable test).

**B. The FAC plausibly alleges subjective indifference.**

The subjective component requires allegations that a defendant knew of and disregarded an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837. But knowledge may be shown through circumstantial evidence, and a factfinder may infer knowledge from the obviousness of the risk. *Id*. at 842; *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) ("a jury is permitted to infer that a prison official had actual knowledge of the constitutionally infirm condition based solely on circumstantial evidence, such as the obviousness of the condition.") The Tenth Circuit reaffirmed this principle in *Bond v. Sheriff of Ottawa Cnty*, holding that evidence of a detainee moaning in pain, asking for help, complaining he could not breathe, deteriorating over time, and being disregarded by jail staff was sufficient to support deliberate indifference. 173 F.4th 1265, 1291-94 (10th Cir. 2026).

That is this case at the pleading stage. Plaintiffs allege that Defendants Heald, Cline, and Deputy Wright were repeatedly confronted with obvious signs of escalating distress and failed to act with the urgency and seriousness that the circumstances required. FAC ¶¶ 14-19, 23, 26-32.

**1. Deputy Wright**

The Motion's argument as to Deputy Wright depends on a legally and factually improper inference: that once Nurse Cline told Wright that Best was "fine," Wright was forever immunized from responsibility no matter what he personally observed afterward. ECF No. 29 at 13-14. That is not the law.

It has been clearly established for over a decade that unreasonable reliance on the advice of a medical professional will *not* excuse deliberate indifference to a prisoner's serious medical needs. *Weatherford ex rel. Thompson v. Taylor*, 347 F. App'x 400, 404 (10th Cir. 2009) (citing

*Johnson v. Doughty,* 433 F.3d 1001, 1010–11 (7th Cir.2006) (observing that "it has been clearly established for over a decade that unreasonable reliance on the advice of a medical professional will not excuse deliberate indifference to a prisoner's serious medical needs."); *Spruill v. Gillis,* 372 F.3d 218, 236 (3d Cir.2004) (same); *Hamilton v. Endell,* 981 F.2d 1062, 1066–67 (9th Cir.1992) ("By choosing to rely upon a medical opinion which a reasonable person would likely determine to be inferior, the prison officials took actions which may have amounted to the denial of medical treatment, and the unnecessary and wanton infliction of pain.")).

The Complaint alleges that Wright was the reporting and primary module officer. FAC ¶ 10. He observed Best's escalating complaints of severe abdominal pain and respiratory distress, his refusal of food, his inability to function normally, and his worsening physical condition. FAC ¶ 30. And he was told by Defendant Nurse Cline that Mylanta, an antacid, was all that Best would get to treat his condition. *Id.* ¶ 29. The incorporated body-worn camera footage depicts labored breathing, refusal of food, severe and unusual pain, inability to respond or ambulate normally, and physical collapse. *Id.* at ¶ 23. The contemporaneous investigation report, cited in Paragraph 22 of the First Amended Complaint, further supports Wright's subjective awareness[3]: Wright reported that near the start of his shift, at approximately 2:25 p.m., he observed Best lying on his bunk complaining of stomach pain; that he contacted Nurse Tara and that she told him Best was "fine"; that he later observed that Best's meal refusal and behavior were not normal based on his personal prior interactions; that he asked Deputy Murphy to assess Best; and that that Murphy agreed Best's

[3] On a motion to dismiss, the Court may consider documents referenced in the complaint when they are central to the plaintiff's claims and their authenticity is not disputed. *Armendariz v. City of Colorado Springs*, 169 F.4th 1036, 1044 (10th Cir. 2026). The investigative report at issue satisfies that standard. The First Amended Complaint expressly references the post-death investigation overseen by Defendants Levin and Hayden, and the report is central to Plaintiffs' allegations regarding delayed care, failure to escalate medical complaints, and missed medication and monitoring entries. Plaintiffs obtained the report through a public-records request and, to the extent the Court wishes to review it at this stage, Plaintiffs can submit it under seal or for *in camera* review.

behavior was not normal. After having lunch, Wright observed Best hunched over, moaning, holding his stomach, sounding short of breath, and speaking in a high-pitched voice. Later, at approximately 7:00 p.m. (now more than 4 hours after being told that Best was "fine"), he observed Best curled up and rocking; and finally, 17 minutes later, he found Best lying against the door, slouched, breathing heavily, and struggling to catch his breath. This time, rather than immediately declare a medical emergency, Wright left to contact Sergeant Nuss "and informed him of the situation with Best." By the time Wright returned, Best "appeared not to be breathing."

The facts pled, as well as those admitted by Wright in his Report, plausibly allege that Wright knew this was not ordinary withdrawal discomfort. The law does not permit a detention officer to ignore obvious, worsening distress simply because medical staff hours earlier minimized the risk. A prior medical assessment may be relevant to what Wright knew, but it does not negate his subjective knowledge as a matter of law. An officer who sees a detainee deteriorating, unable to breathe normally, unable to eat, moaning, rocking, collapsing, and becoming unresponsive cannot simply point to an earlier reassurance and avoid discovery.

*Sealock* confirms the point. In *Sealock*, on review of summary judgment, the Tenth Circuit held that a factfinder could find deliberate indifference where a prison official observed symptom of a serious medical condition—including pallor, sweating, vomiting, and severe pain—but failed to obtain timely medical care commensurate with the obvious risk presented. 218 F.3d 1205, 1210–11 (10th Cir. 2000). In other words, Wright cannot avoid liability merely because he is not a medical provider; once the risk is apparent, the Constitution requires a reasonable response commensurate with the risk presented.

And here, a jury could easily find that Wright's leaving Best to contact Sergeant Nuss or his apparent reliance on Nurse Cline's utterance at approximately 2:25 p.m. that the Best was

"fine," or his waiting until 7:17 p.m. to declare a medical emergency, was *not* a reasonable response. Accordingly, Count I against Wright is plausible and should proceed to discovery.

**IV. Plaintiffs Plausibly State a *Monell* Claim Against Sheriff Roberson in his Official Capacity.**

Under *Monell*, a plaintiff may sue local governing bodies directly for constitutional violations pursuant to the body's policies. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Further, *Monell* has been extended to "private entities acting under color of state law," such as medical contractors. *Dubbs v. Head Start, Inc*., 336 F.3d 1194, 1216 (10th Cir. 2003); *see also Carr v. El Paso Cnty., Colo*., 757 F. App'x 651, 655 (10th Cir. 2018) (unpublished). Additionally, in the Tenth Circuit, *Monell* liability "may exist without individual liability: for example, for a systemic failure of medical policies and procedures." *Lucas*, 58 F.4th at 1144.

To state a *Monell* claim under § 1983, a plaintiff must plead facts supporting three elements: (1) official policy or custom or a systemic failure, (2) causation, and (3) state of mind. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). Stated differently, the plaintiff must show the existence of a municipal policy, custom or systemic failure, a direct causal link between that and the injury, and that the municipality acted with deliberate indifference to the known or obvious consequences of its conduct. *See Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407 (1997).

A municipal policy or custom may be shown in several ways, including through: "a formal regulation or policy statement," "an informal custom that amounts to a widespread practice," decisions by employees with final policymaking authority, ratification by final policymakers, or "the deliberately indifferent failure to adequately train or supervise employees." *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1239–40 (10th Cir. 2020).

For municipal liability, deliberate indifference is judged differently than it is for individual liability. The municipality's deliberate indifference is an objective inquiry: it may be satisfied where the risk was so obvious that the policymaker should have known of it. *Barney v. Pulsipher*, 143 F.3d 1299, 1307 n.5 (10th Cir. 1998). Thus, municipal deliberate indifference exists when the municipality had actual *or constructive* notice that its action or inaction was substantially certain to result in a constitutional violation, yet consciously or deliberately disregarded that risk. *Schneider*, 717 F.3d at 771. Notice may be shown by a pattern of similar misconduct, but it may also be shown where the violation of federal rights was a highly predictable or plainly obvious consequence of the municipality's failure to act. *Finch v. Rapp*, 38 F.4th 1234, 1244 (10th Cir. 2022).

### C. Plaintiffs allege a specific policy, custom, training, and supervision failures

The Motion portrays Count II as a conclusory failure-to-train claim arising from a single six-hour period. That misstates the Complaint. Plaintiffs allege that Best was on withdrawal monitoring from May 29 through June 5, FAC ¶¶ 13-18, 23, 29-30; that he displayed repeated signs of severe withdrawal and worsening medical distress, FAC ¶¶ 14, 16-19, 23, 29-30; that no adequate physician evaluation occurred, FAC ¶¶ 37-38; that a normal KUB on June 3 was followed by no meaningful diagnostic escalation despite ongoing abdominal pain and chest discomfort, FAC ¶ 15; that Heald documented serious abnormalities on June 5 but deferred care until the next day, FAC ¶ 16; that Cline documented collapse risk and respiratory complaints but failed to escalate, FAC ¶ 17; that Wright observed abnormal deterioration but did not ensure emergency care, FAC ¶ 18; and that the incorporated video footage shows obvious medical distress over multiple days. FAC ¶ 23.

Plaintiffs also identify specific *systemic* deficiencies:

1. failure to train detention staff to recognize medical emergencies;

2. failure to require timely physician or advanced-practice review for detainees reporting chest pain, severe abdominal pain, respiratory distress, or symptoms worse than ordinary withdrawal;
3. maintenance of an understaffed and inadequately supervised medical unit;
4. tolerance of a pattern of ignoring serious withdrawal symptoms;
5. requiring or permitting custody staff to defer to medical staff even when a detainee's deterioration is obvious; and
6. failure to oversee VitalCore despite prior incidents, grievances, litigation, and internal reporting.

FAC ¶¶ 29, 38.

Those are not labels. They identify the training, policy, staffing, and supervisory and systemic failures at issue and connect them directly to Best's death. As a direct and proximate result of these training and systemic deficiencies, Best suffered conscious pain, suffering, and death. FAC ¶¶ 21, 34, 39. And while the Motion cites *Carr v. Castle*, for the proposition that a list of training inadequacies is insufficient absent evidence of more, *Carr* was decided at summary judgment—not on a motion to dismiss. 337 F.3d 1221, 1224 (10th Cir. 2003). *Waller v. City & County of Denver* fares no better. Although the Tenth Circuit affirmed a Rule 12(b)(6) dismissal, that case was decided on appeal after a jury verdict. 932 F.3d 1277 (10th Cir. 2019). More critically, the Tenth Circuit found that the complaint failed to allege "a direct causal link" between the sheriff's department's hiring practice and her injuries. *Id.* at 1285. Neither case supports dismissing well-pleaded *Monell* allegations *in this case* at the pleading stage.

*Bond* is directly instructive. There, the Tenth Circuit affirmed a verdict against a county sheriff in his official capacity arising from a pretrial detainee's death after jail staff failed to obtain adequate medical care. 173 F.4th at 1275. The court held that evidence of a detainee's deterioration, complaints of pain, inability to breathe, requests for help, and staff disregard was sufficient to support deliberate indifference. *Id*. at 1292-94. The court also held that evidence of

inadequate training regarding inmate medical care supported a *Monell* failure-to-train theory. *Id*. at 1294-96.

*Bond* rejects the Defendants' central premise: that jail medical-care failures can be dismissed as isolated individual negligence whenever a nurse or medical personnel was involved at some point. *Bond* recognizes that constitutional violations may arise from the combined actions and omissions of jail staff, especially where deficient training, staffing, or policies cause delayed access to adequate medical care.

Here, as in *Bond*, Plaintiffs allege a detainee in obvious distress, repeated failures to obtain timely medical care, and systemic deficiencies in training and escalation practices. The difference is procedural: *Bond* followed a trial; this case is at the pleading stage. Plaintiffs need not prove their *Monell* claim now, they need only plausibly *allege* it.[4]

### D. Plaintiffs adequately allege deliberate indifference by the municipality

Once more, municipal deliberate indifference may be shown by actual or constructive notice that the municipality's action or failure to act is substantially certain to result in constitutional injury, followed by conscious disregard of that risk. *Schneider*, 717 F.3d at 771. And notice may be shown from a pattern of similar misconduct or where the violation of federal rights is a highly predictable or plainly obvious consequence of the municipality's failure to act. *Finch*, 38 F.4th at 1244. The Complaint alleges both.

[4] Defendants' reliance on *Herbel v. City of Marion*, 2024 WL 4416849 (D. Kan. Oct. 4, 2024), is misplaced. *Herbel* does not support dismissal here because the FAC contains precisely the factual allegations that were missing in *Herbel*. Plaintiffs do not allege in general terms that Johnson County failed to train its employees. They identify the specific recurring constitutional problem: the failure of jail and medical personnel to recognize, escalate, and respond to obvious signs of serious medical distress in detainees, including withdrawal-related crises, abdominal pain, respiratory distress, and need for timely physician review or hospital transport. Am. Compl. ¶¶ 13–23, 28–32, 36–39, 43–49. Plaintiffs further allege that Best displayed repeated and worsening signs of serious medical need—vomiting, diarrhea, elevated heart rate, abdominal pain, refusal of meals, shortness of breath, inability to function normally, and eventual collapse—yet Defendants failed to secure timely physician evaluation, emergency response, or hospital transfer. *Id*. ¶¶ 13–23, 28–30, 47–48.

First, it alleges notice from prior incidents, grievances, litigation, and internal reporting, including *Kearns* and *Crump* as examples. FAC ¶¶ 43-44. The County Defendants ask the Court to decide, *before discovery and on a motion to dismiss*, that those sources are insufficient because one case is older and another allegedly ended favorably to defendants. But the Complaint does not allege that *Kearns* and *Crump* are the entire universe of notice. It alleges other incidents, grievances, lawsuits, and internal reporting. FAC ¶ 44. Defendants' contrary characterization raises factual questions for discovery. And, in any event, the Court must accept the Complaint's well-pleaded allegations as true, viewing all reasonable inferences in favor of the nonmoving party, and liberally construe the pleadings. *Lucas*, 58 F.4th at 1137.

Second, even without a long pattern, the need for training and policies regarding withdrawal monitoring, respiratory distress, severe abdominal pain, abnormal vital signs, and emergency escalation is obvious. NCADC knew Best was withdrawing from fentanyl and Xanax. It placed him on withdrawal monitoring. It contracted with VitalCore to provide medical care. It housed detainees whose medical conditions could deteriorate rapidly. Training staff on when to escalate severe pain, shortness of breath, tachycardia, collapse risk, and refusal of meals is not optional or obscure, it is fundamental to operating a jail. The risk that detainees will suffer serious harm if staff cannot recognize or properly escalate those conditions is highly predictable.

At the pleading stage, those allegations plausibly establish deliberate indifference.

**E. Plaintiffs may proceed under a systemic theory**

The Motion repeatedly attempts to isolate each actor's conduct and then argue that no single person bears full responsibility. But the Tenth Circuit recognizes that a municipality may be liable where the *combined* acts or omissions of multiple employees, acting under a governmental policy or custom, violate an individual's constitutional rights, *even in the absence of individual liability as to any county employee*. *Crowson v. Washington County*, 983 F.3d 1166,

1186, 1191 (10th Cir. 2020); *Garcia v. Salt Lake County*, 768 F.2d 303, 310 (10th Cir. 1985). *Bond* applied those principles in the jail-medical-care context.

That principle matters here. Plaintiffs allege a chain of failures: intake and withdrawal monitoring failed to lead to adequate physician evaluation; persistent symptoms failed to trigger diagnostic escalation; Heald deferred serious abnormal findings until the next day; Cline minimized collapse risk and respiratory complaints; Wright and other custody staff failed to insist on emergency response despite obvious deterioration; and supervisory policymakers maintained the training, staffing, and escalation practices that allowed this to occur. A governmental entity cannot avoid liability by dividing responsibility among medical staff, custody staff, supervisors, contractors, and policymakers.

**V. Plaintiffs' Request to Amend to Conform the Pleadings**

Plaintiffs agree that, at this juncture, they are not asserting Counts I or II against Sheriff Hayden or Captain Levin in their individual capacities. The allegations concerning Sheriff Hayden are Captain Levin are more properly understood as supporting Plaintiffs' *Monell* theory—namely, failure to train and supervise, failure to implement adequate policies, and broader systemic deficiencies—which is set forth in Count II.

Plaintiffs also agree that Sheriff Roberson, in his official capacity, appears to be the proper defendant for purposes of Plaintiffs' *Monell* claim for municipal liability. Accordingly, Count II may be restyled as asserted against Sheriff Roberson, in his official capacity, only.

Plaintiffs also acknowledge that they mistakenly sent notice of their tort claims by certified mail to the Clerk of the District Court of Johnson County, Kansas, rather than to the County Clerk. Plaintiffs therefore agree that the County Defendants may be dismissed from Counts III through V. However, because Count III is expressly incorporated into Count II, Plaintiffs do not agree that the factual allegations contained in Count III should be excised from the Complaint in their

entirety. Those allegations remain relevant to Plaintiffs' *Monell* claim and the systemic failures alleged in Count II.

Finally, with respect to Defendant Deputy Marcus Wright, the First Amended Complaint names him as a party defendant and repeatedly alleges his involvement in the events giving rise to Plaintiffs' claims. ECF No. 3, ¶¶ 10, 18, 20, 29–30, 36, 41, 43, 47. Deputy Wright was also served with a summons, ECF No. 14, and appeared through counsel. ECF No. 20. Thus, although Plaintiffs inadvertently omitted Deputy Wright's name from the caption, the pleading, service, and his appearance all confirm that he is a defendant in this action.

Plaintiffs are candid about these issues because they acknowledge some of Defendants' concerns and take seriously the need to amend the Complaint. Accordingly, to ensure proper party alignment, avoid redundancy, and clarify that the claims are asserted against the appropriate parties, Plaintiffs respectfully request leave to conform the pleadings as follows: Count I will be asserted only against Defendants Heald, Cline, and Wright; Count II will be asserted only against Sheriff Roberson, in his official capacity; the factual allegations currently set forth in Count III will be incorporated directly into Count II rather than incorporated by reference; Count III will be eliminated; and Counts IV and V will be asserted only against VitalCore Health Strategies, LLC, Nurse Tara Cline, LPN, and Nurse Stacy Heald, RN.

## VI. CONCLUSION

For the foregoing reasons, the County Defendants' Motion should be denied. The First Amended Complaint plausibly alleges that Deputy Wright was deliberately indifferent to Timothy Best's serious medical needs and that the County's policies, customs, training, supervision, staffing, and systemic medical-care failures were the moving force behind the constitutional violation that caused Best's pain, suffering, and death. Defendants' arguments ask the Court to

draw inferences in their favor, isolate each actor's conduct from the broader system alleged in the Complaint, and resolve factual disputes before discovery. Rule 12 does not permit that.

Plaintiffs also have been candid with the Court about pleading issues that should be corrected.

Accordingly, Plaintiffs respectfully request that the Court deny the Motion to Dismiss as to Count I against Deputy Wright and Count II against Sheriff Roberson in his official capacity, permit Plaintiffs to amend or conform the pleadings as set forth above, and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Andrew Schermerhorn*

Andrew Schermerhorn, KS #24416
**SCHERMERHORN LAW, PC**
4520 Main St., Ste. 700
Kansas City, MO 64111
T: 816-285-6022
andy@schermlaw.com

Thomas Porto, KS #26214
**THE POPHAM LAW FIRM**
712 Broadway, Suite 100
Kansas City, MO 64105
T: 816-221-2288
tporto@pophamlaw.com

**Attorneys for Plaintiff**